# EXHIBIT B

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION OF DEFENDANTS WARRIOR TRADING, INC. AND ROSS CAMERON FOR JUDGMENT ON THE PLEADINGS; OR, IN THE ALTERNATIVE, TO STAY THE PRESENT CASE

McDONALD CARANO

Reply to Reno

Leigh Goddard
*lgoddard@mcdonaldcarano.com*
Laura Jacobsen
*ljacobsen@mcdonaldcarano.com*

January 2, 2019

## Via U.S. Mail and E-Mail

Richards Layton & Finger
Attn: Susan M. Hannigan
One Rodney Square
920 North King Street
Wilmington, DE 19801
Hannigan@RLF.com

Jeff Fortis
69 Olive Way
Woodland, CA 95695
jpfortis@gmail.com
jeff@fortis.me

> ### Re: Demand for Arbitration, Demand to Cease and Desist, and Litigation Hold

Dear Ms. Hannigan:

On behalf of our client Warrior Trading, Inc., please find enclosed a Demand for Arbitration against Jeffrey Fortis pursuant to section 14(g) of the Shareholder Agreement dated August 18, 2016, as amended by Amendment No. 1 dated December 15, 2017 (the "Shareholder Agreement").

As you can see, the Demand for Arbitration seeks to resolve, among other items, the parties' dispute regarding Mr. Fortis's termination from Warrior Trading for cause, the termination of his shareholder rights, and the right of the Company and other

mcdonaldcarano.com

2300 West Sahara Avenue, Suite 1200 ▪ Las Vegas, Nevada 89102 ▪ 702.873.4100

100 West Liberty Street, Tenth Floor ▪ Reno, Nevada 89501 ▪ 775.788.2000
Mailing Address: P.O. Box 2670 ▪ Reno, Nevada 89505

MERITAS

shareholders to repurchase Mr. Fortis's shares as a result of his termination and/or other misconduct. In addition, the Demand for Arbitration contains other causes of action based upon Mr. Fortis's actions to sabotage Warrior Trading both before and after his termination.

Relatedly, we write to demand the Mr. Fortis *immediately cease and desist* from taking actions to sabotage Warrior Trading and/or to harass Ross Cameron and Lauren Cameron. Specifically, we demand that Mr. Fortis cease and desist from:

(1) accessing and/or downloading Warrior Trading email, documents, document storage systems, calendars, accounts (including without limitation insurance, security, social media, internet service provider, and credit card accounts), confidential information, and other property and information;

(2) emailing Ross Cameron, Lauren Cameron, and any other Warrior Trading employee;

(3) creating, posting, or participating in the creation or posting of defamatory and/or threatening videos regarding Warrior Trading, Ross Cameron, or Lauren Cameron;

(4) subscribing Lauren Cameron to receive emails and/or text alerts from third parties;

(5) disrupting the business of Warrior Trading, Ross Cameron, and/or Lauren Cameron, including their business relationships;

(6) harassing any Warrior Trading employees, including Ross and Lauren Cameron;

(7) any other actions prohibited by law or applicable agreement.

Mr. Fortis's actions in this regard are unlawful, defamatory, and harassing and may subject him to civil liability. Warrior Trading is prepared to take any and all available action to prevent further disruption, including without limitation **reporting any continuing harassing or unlawful conduct to law enforcement.**

**In addition, Warrior Trading demands that any videos posted to YouTube regarding Warrior Trading, Ross Cameron, or Lauren Cameron be removed *immediately*.**

**Finally, Warrior Trading hereby demands that Mr. Fortis immediately return any and all Warrior Trading property, including without limitation the Apple laptop purchased by Warrior trading, any keys, key cards, documents, or other Company property or information.** Please not that Warrior Trading originally demand return of these items via mail with the October 16, 2018 termination letter. To date, Mr. Fortis has failed to return any Company property.

This letter does not contain a complete recitation of all claims, issues, or facts related to this matter or which may be pursued by Warrior Trading or any of its directors, officers, shareholders, or other related or affiliated parties. This letter does not constitute and should not be construed as a waiver of any rights or remedies by Warrior Trading, Ross Cameron, or Lauren Cameron. All rights are hereby expressly reserved.

As these matters have resulted in litigation, you are reminded that Mr. Fortis has a duty to protect and preserve evidence including, without limitation, tangible items and documentation and electronically-stored information ("ESI") as discuss below:

## 1.    TANGIBLE ITEMS AND DOCUMENTS

Tangible items and documentation include, without limitation, written communications, notes of communications, recordings, hard drives and other digital storage devices, and voicemails of any kind.

## 2.    ESI

### A.    Information Subject to Preservation

ESI subject to preservation includes information stored on digital systems and devices. Digital systems and devices include systems and devices that are currently in use and systems and devices that are no longer in use. Digital systems and devices also include systems and devices to which Mr. Fortis does not have immediate proximity, but over which Mr. Fortis has agency. Examples of such systems and devices include, without limitation, servers, computers, laptops, smartphones and tablets, messaging systems, digital devices, and cloud repositories.

The term "ESI" should be afforded the broadest possible definition. It includes, by way of example and not limitation, potentially relevant information stored electronically, magnetically, or optically as accounting system files, digital communications (e.g., email, groupware, voicemail, and text messages), word-processed documents and drafts, spreadsheets and tables and worksheets, sound recordings (e.g., .WAV and .MP3 files),

databases, calendar and diary application data (e.g., Outlook PST), and backup and archival files.

ESI resides within electronic, cloud-based, magnetic, and optical storage media. Some ESI may reside in areas Mr. Fortis deems reasonably accessible. Some ESI may reside in areas Mr. Fortis deems not reasonably accessible. ESI stored in areas that Mr. Fortis deems not reasonably accessible must be preserved so as not to deprive my client's right to secure the evidence or the arbitrator's right to adjudicate any issues.

### B.     Immediate Intervention

Mr. Fortis must act immediately to preserve potentially relevant ESI including, without limitation, information concerning all claims and defenses in this dispute with a Created or Last Modified date on or after January 1, 2016, through the date of this demand.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. Mr. Fortis must also intervene to prevent loss due to routine operations that Mr. Fortis or third parties use (including cloud-based systems), and Mr. Fortis must employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI may be altered and erased by continued use of Mr. Fortis's computers and other devices.

Booting a computer, digital device, or server and examining its contents or running any application on a local system or cloud-based system may irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from Mr. Fortis's failure to act diligently and responsibly to prevent the loss or corruption of ESI.

Nothing in this demand for preservation of ESI should be understood to diminish Mr. Fortis's concurrent obligation to preserve documents, tangible things, and other potentially relevant evidence.

### C.     Suspension of Routine Destruction

Mr. Fortis is directed immediately to initiate a litigation hold for potentially relevant ESI and to act diligently and in good faith to secure and audit compliance with such litigation hold. Mr. Fortis is further directed immediately to identify and modify or suspend features of Mr. Fortis's information systems and devices that in routine operation operate to cause the loss of potentially relevant ESI. Examples of such features and operations

include, without limitation, purging the contents of local or cloud email repositories by age, capacity, or other criteria; using data or media wiping, disposal, erasure, or encryption utilities or devices; overwriting, erasing, destroying, or discarding any log files or back up media; re-assigning, re-imaging, or disposing of systems, servers, devices, or media; running antivirus or other programs effecting wholesale metadata alteration; releasing or purging cloud storage repositories; using metadata stripper utilities; executing drive or file defragmentation or compression programs; and overwriting, erasing, destroying, or discarding any data from electronic devices.

### D.    Guarding Against Deletion

Mr. Fortis should anticipate that his agents, employees, or others may seek or inadvertently act to hide, destroy, or alter ESI, and Mr. Fortis must act to prevent or guard against such actions. Especially where devices have been used for Internet access or personal communications, Mr. Fortis should anticipate that users may seek to delete or destroy information that they regard as personal, confidential, or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not unique to Mr. Fortis. The destruction of evidence in this matter may occur with such regularity that all custodians of ESI and their counsel are obliged to anticipate and guard against it.

### E.    Methods of Data Preservation

I demand that Mr. Fortis employ forensically sound methods to preserve ESI. Failure to employ such methods poses a significant threat of spoliation and data loss. "Forensically sound" means duplicating all data stored on the evidence media while employing a proper chain of custody. "Forensically sound" includes using tools and methods that make no changes to the evidence and that support authentication of any duplicate as a true and complete bit-for-bit image of the original. Forensically sound methods for preserving ESI guard against changes to metadata and preserve all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

Mr. Fortis should take affirmative steps to prevent anyone with access to his data, systems, and archives from seeking to modify, destroy, or hide electronic evidence on network or local hard drives (such as deleting or overwriting files, using data shredding and overwriting applications, performing defragmentation, re-imaging or replacing drives, encrypting data, compressing data, and using software to camouflage data such as steganography).

Preservation of data on local hard drives is achieved by first creating, and then authenticating, a forensically qualified image (copy) of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image of the drive. Be advised that a conventional backup of a hard drive is not a forensically qualified image, because it captures only active unlocked data files. It fails to produce forensically significant data that may exist in such areas as unallocated space, slack space, and the swap file.

Once obtained, each such forensically qualified image (copy) should be labeled to identify the date of acquisition, the person or entity acquiring the image, and the system and medium from which it was obtained. Each such forensically qualified image (copy) should be preserved without alteration and validated with SHA-256 and MD5 hashes.

ESI must be preserved in the form or forms in which it is ordinarily stored and maintained, not in the manner that data is displayed on a computer monitor or how it appears when it is printed.

Preservation must include system and application metadata. System metadata is information describing the history and characteristics of ESI. This information is typically associated with tracking or managing an electronic file. It often includes data reflecting a file's name, size, location, and dates of creation and last modification or access. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data in addition to the To, From, Subject, Received Date, CC and BCC fields.

Application metadata is information that's automatically included or embedded in electronic files but that may not be apparent to a user, displayed on a computer screen, or printed out in reports. This data may include deleted content, commentary, collaboration data, and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to produce ESI.

F.     Home Systems, Laptops, Cloud Systems, and Other ESI Venues

Mr. Fortis should determine whether any home or portable systems or electronics might contain potentially relevant data. To the extent that employees, contractors, or agents have sent or received potentially relevant emails or texts, or created or reviewed potentially relevant documents, Mr. Fortis must preserve the contents of systems, devices, and media used for these purposes (including potentially relevant data not only from portable and home computers, but also from portable USB drives, users' smartphones, tablets, cloud systems, voicemail boxes, or other forms of ESI storage). Similarly, if employees, contractors, or agents used cloud-based or browser-based email

accounts or services (such as Hotmail, Gmail, Yahoo Mail, or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted, and Archived Message folders) should be preserved.

### G. Ancillary Preservation

Mr. Fortis must preserve documents and other tangible items that may be required to access, interpret, or search potentially relevant ESI including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, username and password rosters, and the like.

Mr. Fortis must preserve any passwords, keys, or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals, and license keys for applications required to access the ESI.

Mr. Fortis must preserve any cabling, drivers and hardware, standard CD or DVD optical disk drives, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, and other legacy or proprietary devices.

### H. Agents, Attorneys, and Third Parties

Mr. Fortis's preservation obligation extends beyond ESI in his care, possession, custody, or control and includes ESI in the custody of others that is subject to his direction or control. Accordingly, Mr. Fortis must notify any current or former agent, attorney, employee, custodian, or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of Mr. Fortis's obligation to do so, and Mr. Fortis must take reasonable steps to secure their compliance.

### I. Confirmation of Compliance

Please confirm in writing by close of business on **January 9, 2019** that Mr. Fortis has taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this potential action. If Mr. Fortis has not undertaken the steps outlined above, or if Mr. Fortis has taken other actions, please describe in writing what Mr. Fortis has done to preserve potentially relevant evidence.

In addition, please confirm in writing by close of business on **January 4, 2019** that any and all videos regarding Warrior Trading, Ross Cameron, and/or Lauren Cameron in which Mr. Fortis has participated in creating or posting on the internet have been

removed. Finally, please contact me to arrange for Mr. Fortis' return of Warrior Trading property.

I look forward to hearing from you.

Sincerely,

Leigh Goddard

LTG/pm
Enclosure
cc:    (via email)
       Client
       Timothy M. Holly
       Ryan P. Newell
4844-3883-0212, v. 2